IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KENNETH DESHUN BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 3:05-cv-1166-T |
| | ) |
| CRAIG DAVIDSON, et al., | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' SPECIAL REPORT

COME NOW Jeff Fuller, Shirley Johnson, Craig Davidson, and Randolph County, Defendants in the above-styled cause, and submit their Special Report to the Court as follows:

### INTRODUCTION

Plaintiff in this action, Kenneth Deshun Bell, hereinafter "Plaintiff," filed a Complaint in the United States District Court for the Middle District of Alabama on December 8, 2005. On December 12, 2005, this Court entered an Order instructing Defendants to file a Special Report addressing Plaintiff's claims within forty days of that Order. On January 24, 2006, this Court granted the Defendants a seven-day extension of time to file their Special Report and Answer.

Plaintiff was arrested on November 21, 2005, on a charge of violation of his probation. (Exhibit A, Inmate File of Kenneth Deshun Bell, "Inmate File," Booking Sheet dated November 21, 2005; Exhibit B, Alacourt SJIS Report, CC 2004-000064-70.) He was booked into the Randolph County Jail that same day. (Ex. A, Inmate File, Booking Sheet.) He was released from the Randolph County Jail on January 12, 2006. (Exhibit C, Inmate File of Kenneth Deshun Bell, "Inmate File," Inmate Information Card.)

**PLAINTIFF'S ALLEGATIONS**

The Plaintiff alleges that on November 25, 2005, he was denied medical care. (Plaintiff's Complaint, pp. 2-3.) He requests to be "paid for [his] pain and suffering" and requests that Defendant Davidson be "relieved of his duty." (Plaintiff's Complaint, p. 4.)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

**I.   FACTS**

**A.   Medical Policy and Procedure**

It is the policy and procedure of the Randolph County Jail to provide prompt medical attention to each and every inmate upon their request. A request may be submitted via a written request form or made verbally to a correctional officer. The inmate is then put on the list to see the Nurse Practitioner, or, in emergency situations, taken immediately to the Wedowee Hospital across the street from the Jail. Inmates can also be seen, at least weekly, by the jail Nurse Practitioner. (Exhibit D, Affidavit of Jeff Fuller, "Fuller aff.," ¶ 6; Exhibit E, Affidavit of Shirley Johnson, "Johnson aff.," ¶ 5; Exhibit F, Affidavit of Craig Davidson, "Davidson aff.," ¶ 5.) The health and medical treatment of inmates at the Randolph County Jail is an important matter. Every inmate request for medical attention is treated seriously by the Defendants and the jail staff. Upon receipt of an inmate request for medical care, established procedures are

followed to assure that a qualified health professional evaluates the inmate in a timely manner. (Ex. D, Fuller aff. ¶ 7; Ex. E, Johnson aff. ¶ 6; Ex. F, Davidson aff. ¶ 6.)

The Randolph County Sheriff's Department operates the Randolph County Jail pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected. Members of the jail staff are trained both in house and at certified training programs and academies regarding all aspects of their jobs, including the administration of medical care to inmates. (Ex. D, Fuller aff. ¶ 8; Ex. E, Johnson aff. ¶ 7; Ex. F, Davidson aff. ¶ 7.) It is the policy of the Randolph County Sheriff's Department that all inmates confined in the Randolph County Jail be entitled to a level of health care comparable to that available to the citizens in the surrounding community in order that the inmates' physical and emotional well-being may be maintained. All medical care rendered to inmates in the Randolph County Jail is delivered under the direction of a licensed health care practitioner. (Ex. D, Fuller aff. ¶ 9; Ex. E, Johnson aff. ¶ 8; Ex. F, Davidson aff. ¶ 8.) The Jailers at the Randolph County Facility have access to over-the-counter medication such as Tylenol, Ibuprofen, and Pepto-Bismol to distribute as needed to inmates. (Ex. D, Fuller aff. ¶ 10; Ex. E, Johnson aff. ¶ 9; Ex. F, Davidson aff. ¶ 9.)

### B.    Plaintiff's Medical Care

Upon admission to the Randolph County Jail, the Plaintiff was given a routine health screening. (Exhibit G, Inmate File, Health Screening Form.)

The records in the Plaintiff's inmate file show that the Plaintiff was seen on December 6, 2005, by Nurse Practitioner Ricky Daniel because of complaints that his private parts were sore. (Ex. E, Johnson aff. ¶ 10; Exhibit 1 to Ex. E, Johnson aff., Doctor's Call List dated December 6, 2005.) According to the records from the Wedowee Hospital Clinic, when the Plaintiff saw Nurse Daniel, he complained that his testicles were sore and that he had soreness in his lower

3

abdomen. (Exhibit H, Wedowee Hospital Clinic Medical Records dated December 6, 2005.) The medical records show that Nurse Daniel examined the Plaintiff and determined that the Plaintiff needed Ciprofloxacin, an antibiotic. (Ex. H.) The jail records show that the Plaintiff's prescription for Ciprofloxacin was filled the next day. (Ex. E, Johnson aff. ¶ 10; Exhibit 2, Prescription Card dated December 7, 2005.) The jail records also show that the Plaintiff was given his prescribed medication regularly by the jail staff until his release from the Randolph County Jail. (Ex. E, Johnson aff. ¶ 10; Exhibit 3, Medication Administration Record dated December 2005.)

      **C.**     **Plaintiff's Noncompliance with the Jail's Grievance Procedure**

Plaintiff has not complied with the grievance procedures of the Randolph County Detention Facility. Jail Administrator Johnson never received any grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint. As there is a grievance procedure in the Randolph County Jail, it could have been used by the Plaintiff to make known any concerns he had regarding his incarceration. However, no grievance was ever written and filed by the Plaintiff concerning these matters. Had any grievance been submitted by the Plaintiff, it would have been placed in his inmate file per Jail policy. However, Plaintiff's inmate file is devoid of any such grievance. (Ex. E, Johnson aff. ¶ 10.)

**II.    LAW**

      **A.**     **All claims by Plaintiff against the individual Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. <u>Parker v. Williams</u>, 862 F.2d 1471, 1476 (11th Cir. 1989)

4

(holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983. The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because the Defendants in their official capacities are not "persons" under § 1983, claims against them in their official capacities fail to state a claim upon which relief can be granted. Therefore, any claims against Defendants in their official capacities should be dismissed. Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

    **B.**    **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

        **1.**    **Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Randolph County Jail. Secondly, he has not alleged that he pursued any

5

grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Despite the existence of a grievance procedure at the Randolph County Detention Facility, Plaintiff did not file a grievance with the jail concerning the allegations made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Randolph County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Because Plaintiff has not made a showing of physical injury that is greater than de minimis his complaint is due to be dismissed.

6

    **C.**    **The individual Defendants, in their individual capacities, are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and Detention Center officials of Randolph County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."

7

Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take

8

reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, the evidence shows that the Plaintiff was examined by Nurse Practitioner Ricky Daniel and was prescribed an antibiotic. The evidence also shows that the Randolph County Jail staff administered this prescribed medication to the Plaintiff until his release from jail.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

9

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[1] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by the Nurse Practitioner. The jailers, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of a Nurse Practitioner.

Because the Plaintiff has failed to show that the Defendants violated his constitutional rights and because he cannot meet his burden in showing that clearly established law gave the

---

[1] The medical director was a trained and licensed nurse. 302 F.3d at 846.

Defendants fair warning that their conduct was unlawful, Defendants are entitled to qualified immunity from Plaintiff's claims.

> E. **Plaintiff has failed to allege personal involvement against Sheriff Fuller and Jail Administrator Johnson as required by 42 U.S.C. §1983, and none of the individual Defendants may be held liable based on a *respondeat superior* theory of liability.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Fuller or Jail Administrator Johnson were in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement. Plaintiff has offered no allegation demonstrating that these named Defendants was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts – in fact, the Complaint is completely devoid of any claim against Sheriff Fuller and Administrator Johnson-- to show that these Defendants personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights. As such, Plaintiff's claims are due to be dismissed against these Defendants.

To the extent that Plaintiff's claim against Sheriff Fuller, Administrator Johnson, and Captain Davidson is an attempt to hold them liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

There are absolutely no facts that show a causal connection between any action of Sheriff Fuller or Jail Administrator Johnson and the alleged constitutional violation. Furthermore, even assuming, *arguendo*, that Captain Davidson did state that the Plaintiff could not see the doctor, it is obvious from a review of the medical records that the Plaintiff was, in fact, examined and treated by the Nurse Practitioner. Because the Plaintiff was given medical care, there can be no causal connection established. Accordingly, Plaintiff's claims against Defendants Fuller, Johnson, and Davidson are due to be dismissed.

### F. Randolph County cannot be held liable for the alleged constitutional violation.

#### 1. Randolph County was not deliberately indifferent as to form a violation of the Plaintiff's Eighth or Fourteenth Amendment Rights as enforced by 42 U.S.C. § 1983.

In Marsh v. Butler County, 268, F.3d 1014 (11th Cir. 2001) (en banc), the Court, when addressing a plaintiff's claim for deliberate indifference against both the county and the sheriff, noted the following:

> We address the claims against the County in detail only for the conditions of confinement. Plaintiffs also alleged deliberate indifference to Owens's serious medical needs based on his release. They make this claim against Defendants in general, which would seem to include the County. *Nothing indicates, however, that the County was involved in the alleged deprivation of medical care to Owens. Moreover, under Alabama law the County is not responsible for assuring procedures are in place for inmates to get medical care. Alabama law assigns counties a "limited role in building and funding the jails."* See *Turquitt v. Jefferson Cty., Ala.,* 137 F.3d 1285, 1290 (11th Cir. 1998) (en banc). *Therefore,*

12

> *the County is not a responsible party for the alleged tort of deliberate indifference to Owens's medical needs. This claim was properly dismissed against the County.*

268 F.3d at 1026 n.6 (emphasis added). Randolph County's duties are limited to providing the funding for inmate medical care. The Plaintiff has not alleged or shown that the funding for medical care was inadequate. In fact, the evidence shows that medical care for inmates was properly funded because the Plaintiff was seen by a Nurse Practitioner and was given prescribed medication.

Because Alabama law assigns the provision of medical care to the sheriff and his staff *rather than to the county*, Randolph County was in no way deliberately indifferent and therefore is entitled to summary judgment on the Plaintiff's claims. See Marsh, 268 F.3d at 1026 n.6.

    **2.    Randolph County is entitled to judgment as a matter of law because the Plaintiff has failed to show how the County was the moving force behind his alleged deprivation**.

In order to hold a county or municipality liable for constitutional deprivations under § 1983, the Plaintiff must show that the county or municipality was the "moving force" behind the violation. See McElligott v. Foley, 182 F.3d 1248, 1259 (11th Cir. 1999) (affirming summary judgment in favor of county on the basis that "McElligott has not shown that a county policy or custom was the 'moving force' that caused the alleged constitutional violations."). In Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), and subsequent cases, courts have repeatedly required a plaintiff seeking to impose liability on a municipality under § 1983, to identify a "policy" or "custom" that caused the plaintiff's injury. By requiring plaintiffs to identify a policy, courts have ensured that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Monell, 436 U.S. at 694.

13

In order to demonstrate a policy, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to a municipality. The plaintiff must demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged constitutional deprivation. Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997); see also Polk County v. Dodson, 454 U.S. 312, 326 (1981). Only "when execution of a government's policy or custom" is responsible for "inflict[ing] the injury," and thus "the moving force of the constitutional violation" is the governmental entity liable. Monell, 436 U.S. at 694; see also Farred v. Hicks, 915 F.2d 1530, 1532-33 (11th Cir. 1990); Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir. 1985). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993). A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the alleged injury. Brown, 520 U.S. at 404.

As in the present case, where there are claims not involving an allegation that the County action itself violated federal law, or that a county official directed or authorized the deprivation of federal rights, an allegation that a plaintiff suffered a deprivation of federal rights at the hands of a sheriff's department employee will not alone permit an inference of county culpability and causation; the plaintiff will simply have shown that the employee acted culpably. Id. at 406-07. Here, there is no allegation or evidence of a policy or custom of Randolph County that led to the allegedly wrongful acts. Plaintiff has alleged absolutely no factual connection between anything that Randolph County did or did not do which affirmatively caused his alleged failure to receive medical treatment. Because there is no evidence that Randolph County breached its duty to fund the medical care of inmates or any evidence that any policy of Randolph County was the moving

force behind any alleged constitutional violation, Randolph County is entitled to summary judgment.

### 3. Randolph County has no duty regarding the daily management of the Randolph County Jail.

The Eleventh Circuit in <u>Turquitt v. Jefferson County, Ala.</u>, sitting <u>en banc</u>, analyzed Alabama law with respect to whether Alabama counties possessed any authority over the operation of county jails or the supervision of jail employees or inmates. 137 F.3d 1285, 1288-1291 (11th Cir. 1998) (en banc). In <u>Turquitt</u> the Eleventh Circuit found as follows:

> A thorough analysis of the Code reveals that no statute authorizes counties to supervise inmates in the county jails; instead, authority over inmates is expressly delegated to Alabama sheriffs. Moreover, in operating the jails, sheriffs are subject to control by state executive agencies, not by counties.
>
> Under the Alabama Code, the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself. The Code bestows upon the sheriff "the legal custody and charge of the jail in his county and all prisoners committed thereto." <u>Ala. Code</u> § 14-6-1 (1995). The Alabama Supreme Court has held that § 14-6-1 demonstrates that "the sheriff's authority over the jail is totally independent of the [county commission]." <u>King v. Colbert County</u>, 620 So. 2d 623, 625 (Ala. 1993). The sheriff appoints, directs, and controls the deputies and jailers who work at the jail. Ala. Code § 14-6-105. The County has no authority to manage the sheriff's employees. <u>See</u> <u>Lockridge v. Etowah County Comm'n</u>, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984); <u>see also</u> <u>Terry v. Cook</u>, 866 F.2d 373, 379 (11th Cir. 1989) (finding that Alabama county commissioners have no authority to hire or fire deputies or jailers). . . .
>
> We recognize that Alabama counties possess some duties with respect to county jails. However, none of these duties relates to the daily operation of the jails or to the supervision of inmates.

<u>Id.</u> at 1289.

Under Alabama law, a county's duties with regard to a jail are limited to the duty to erect a jail and to maintain the jail facilities. <u>Ala. Code</u> § 11-14-10 (1975); <u>King v. Colbert County</u>, 620 So. 2d 623, 625 (Ala. 1993); <u>Stark v. Madison County</u>, 678 So. 2d 787, 788 (Ala. Civ. App. 1996). The word "maintain" has been interpreted to require a county to "keep a jail and all

15

equipment therein in a state of repair and to preserve it from failure or decline." Keeton v. Fayette County, 558 So. 2d 884, 886 (Ala. 1989); accord King, 620 So. 2d at 625. Thus, under Alabama law, Randolph County has no duty in regard to the operating, administering, or the overseeing of the Randolph County Jail. Randolph County has no duty and, under Alabama law, can have no duty with regard to the day to day operations of the jail. See Turquitt 137 F.3d at 1288-1291. Therefore, Plaintiff's claims against Randolph County are without merit.

> 4. **Randolph County cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory for the acts or omissions of employees of the Randolph County Jail.**

The United States Supreme Court examined the causation and fault standards for holding a governing body liable based upon an employer-employee relationship in depth in Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397 (1997). Relying on Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), the Court concluded that 42 U.S.C. § 1983, "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." Brown, 520 U.S. at 403 (quoting Monell, 436 U.S. at 692). A municipality may not be held liable under § 1983 merely because it employs a tortfeasor. Brown, 520 U.S. at 403. "While Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*." Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) (quoting Monell, 436 U.S. at 665-683) (emphasis in original). Because Randolph County cannot be held liable for the actions of jail officials in this case, it is entitled to summary judgment on the Plaintiff's claims.

      **5.**     **Further, Employees of the Randolph County Jail are not policymakers of Randolph County for purposes of holding the County liable pursuant to a custom or policy.**

While a county may be held liable for a constitutional violation caused by a policy or custom created by an official "whose edicts or acts may fairly be said to represent official policy," Monell, 436 U.S. at 694, whether a given official is properly viewed as a policymaker for a particular governmental entity must be resolved on the basis of state law. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). Alabama law clearly establishes that jail employees are not county policymakers, but are the responsibility of the Sheriff, and that the Sheriff acts for the state, and not for the county. See McMillian v. Monroe County, Ala., 520 U.S. 781, 788 (1997) (holding Alabama sheriff policymaker of state and not county); Turquitt,137 F.3d at 1286-89 (11th Cir. 1998) (en banc) (finding sheriff has control over jail employees and an Alabama County cannot be held vicariously liable for actions of the Sheriff with respect to jail management, as "an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail"); King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993) (holding county commission has no control over jail operations); Crocker v. Shelby County, 604 So. 2d 350 (Ala. 1992) (holding county commission has no authority over, and takes no part in, training or supervising deputy sheriffs); Stark v. Madison County, 678 So. 2d 787, 788 (Ala. Civ. App. 1996) (finding that an Alabama county has no responsibility for actions of sheriff); Parker v. Amerson, 519 So. 2d 442, 442 (Ala. 1987) (holding that a sheriff is not treated as an "employee of the county for purposes of imposing liability on the county under a theory of *respondeat superior*"); Lockridge v. Etowah County Comm'n, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984) (holding county commission does not have authority to promulgate work rules for employees of sheriff).

Thus, Randolph County has no authority with respect to training, supervising or investigating the conduct of employees at the Randolph County Jail, and Randolph County may not be held liable for any acts or omissions of Randolph County Jail employees. Accordingly, Randolph County is entitled to judgment as a matter of law in its favor.

### G. Plaintiff's claim for injunctive relief is moot.

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims. See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). In the instant case, the Plaintiff cannot overcome this initial hurdle because the Plaintiff's claims are moot. "[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). Because Plaintiff has been released from the Randolph County Jail, his claims for injunctive relief are moot. Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986). Therefore, to the extent that the Plaintiff's Complaint seeks injunctive relief, it fails for lack of subject matter jurisdiction.

### H. Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the

18

moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[2] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Kenneth Deshun Bell in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this the 30th day of January, 2006.

> s/ C. Richard Hill, Jr.
> C. RICHARD HILL, JR. Bar No. HIL045
> Attorney for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama 36124
> Telephone: (334) 262-1850
> Fax: (334) 262-1889
> E-mail: rhill@webbeley.com

---

[2] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 30th day of January, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

      Kenneth Deshun Bell
      Randolph County Jail
      322 Mulberry Street
      Roanoke, AL 36274

                        **s/C. Richard Hill, Jr.**
                        OF COUNSEL